UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NADIRA F., | ) |
| Plaintiff, | ) No. 19-cv-6517 |
| v. | ) Magistrate Judge Susan E. Cox |
| ANDREW M. SAUL, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Nadira F.[1] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. The parties have filed cross motions for summary judgment.[2] As detailed below, Plaintiff's motion for summary judgment [dkt. 9] is GRANTED; Defendant's motion for summary judgment [dkt. 16] is DENIED. The ALJ's decision is reversed and remanded for proceedings consistent with this Memorandum Opinion and Order.

**I.   Background**

   **a.   Procedural History**

Plaintiff was born in 1968. [Administrative Record ("R.") 270.] On November 4, 2015, Plaintiff protectively filed for Disability Insurance Benefits, alleging a disability onset date of January 1, 2012. [R. 101.] Her application was denied initially and again upon reconsideration. [*Id.*] Plaintiff, represented by counsel, then appeared at an administrative hearing before Administrative Law Judge ("ALJ") Jessica Inouye on June 4, 2018. [R. 32-71.] As Plaintiff's primary language is Serbo-Croatian,[3]

---

[1]   In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[2]   Plaintiff has filed a Memorandum in Support of Reversing or Remanding Agency Decision [dkt. 9], which the Court construes as a motion for summary judgment.

[3]   The Record variously refers to Plaintiff's primary language as Bosnian [*e.g.*, R. 384] or Serbian [*e.g.*, R. 532], so the Court employs the term "Serbo-Croatian," which is the official language of Bosnia and Herzegovina, Croatia, Montenegro and Serbia, which were previously Socialist Republics in the Socialist Federal Republic of Yugoslavia,

a translator for Plaintiff was available at the hearing. [*Id.*; 101, 384; 532.] A vocational expert ("VE") was also present and offered testimony. [R. 32-71.] At the administrative hearing, Plaintiff amended her disability onset date to March 4, 2014. [R. 49-51.] On September 12, 2018, ALJ Inouye issued an unfavorable decision. [R 101-13.] Plaintiff requested Appeals Council review, which was denied on August 1, 2019. [R. 1-6.] Thus, the Decision of the Appeals Council is the final decision of the Commissioner. Plaintiff, through counsel, filed the instant action on October 1, 2019, seeking review of the Commissioner's most recent decision. [Dkt. 1.]

    b.    **The ALJ's Decision**

On September 12, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 101-13.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 4, 2014. [R. 103.] At Step Two, the ALJ found that Plaintiff had the severe impairments of: depressive disorder; anxiety disorder; and varicose veins. [*Id.*] The ALJ determined that Plaintiff had the nonsevere impairments of deep vein thrombosis; stomach (pain)[4]; hyperlipidemia; lower back pain; ganglion cyst/benign neoplasm of tissue/subdermal nodule; and headaches. [R. 104.] Additionally, the ALJ noted that Plaintiff's "neck and arm pain, carpal tunnel syndrome, goiter, and PTSD (post-traumatic stress disorder) were not diagnosed during the period at issue." [*Id.*]

At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 105-07.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work with the following limitations:

---

from which Plaintiff emigrated in 1999 [R. 502]. Encyclopædia Britannica (2018), *Serbo-Croatian language*, https://www.britannica.com/topic/Serbo-Croatian-language (last accessed Oct. 2, 2020).

[4]    The Court presumes the nonsevere issue of "stomach" is really "stomach pains," as the ALJ mentions, in the next paragraph, Plaintiff being prescribed medications for her stomach pains. [R. 104.]

she can learn, understand, and carry out short, repetitive tasks in a setting that does not require rapid pace or meeting strict production quotas; she can interact superficially with a small group of familiar co-workers in a setting with limited public contact (*i.e.*, occasional public interactions would be brief and superficial); she can tolerate only occasional, minor, infrequent changes in routine; and she is able to sustain concentration, persistence, and pace of these work tasks in two hour increments throughout a typical workday. [R. 107-111.] At Step Four, the ALJ found Plaintiff incapable of performing any of her past relevant work, but that other jobs existed in significant numbers in the national economy that Plaintiff would be able to perform. [R. 111-13.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 113.]

**II.    Social Security Regulations and Standard of Review**

The Social Security Act requires all applicants to prove they are disabled as of their date last insured ("DLI") to be eligible for disability insurance benefits. A court's scope of review in these cases is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

**III.   Discussion**

Among other things, Plaintiff asserts the ALJ erred in her assessment of Plaintiff's PTSD diagnosis. The Court agrees and remands on this basis.

In Step Two of her analysis of Plaintiff's claim, the ALJ determined that Plaintiff's PTSD was not a medically determinable impairment because it was allegedly not diagnosed during the relevant

period. [R.104.] The ALJ noted that Plaintiff "was not diagnosed with…PTSD until August 2017, which is post-date last insured." [*Id.* (citing R. 637).] This is erroneous. Plaintiff was diagnosed in the United States with PTSD over three years prior to this date, on March 4, 2014. [R 415-18.] The Administrative Record also contains a February 20, 2014 mention of Plaintiff having a history of PTSD. [R. 419.] Finally, there is a notation that while visiting Serbia in 2013, Plaintiff was prescribed the antipsychotic medication Risperdal [R.416]; the Record does not contain her medical records or diagnoses from this time in Serbia, but the Court notes that Risperdal is often prescribed to treat PTSD. *See*, *e.g.*, *Hardin v. Comm'r of Soc. Sec.*, 2020 WL 525923, at \*2 (D.N.J. Jan. 31, 2020); *Penman v. Colvin*, 2016 WL 3452609, at \*1 (S.D. Ind. June 23, 2016); *Robinson v. Astrue*, 2011 WL 5879435, at \*3 (M.D. Tenn. Nov. 23, 2011).

Therefore, Plaintiff had a substantiated medically determinable mental impairment, with an onset date prior to Plaintiff's DLI, which the ALJ wholly failed to address using the special technique for the evaluation of mental impairments set forth in 20 C.F.R. § 404.1520a. Part and parcel of this failure, the ALJ failed to rule on the severity of Plaintiff's PTSD, singly or in combination with Plaintiff's other mental impairments (*i.e.*, depressive disorder or anxiety disorder). More specifically, despite the ALJ's findings that Plaintiff is depressed [R. 103, 106, 108-09, 111], has social anxiety [R. 106], trouble sleeping at night [R. 107-08], and does not have a social life (*i.e.*, the ALJ referenced thrice Plaintiff's sole friend at R. 106 and 111]), the ALJ made no assessment of whether Plaintiff's PTSD was severe and did not rate the severity of this particular mental impairment at Steps Two or Three. *See, e.g., Jaramillo v. Astrue*, 2013 WL 12329836, at \*5 (D.N.M. July 30, 2013) (recommending remand based on failure to properly analyze PTSD in light of these specific symptoms), report and recommendation adopted sub nom. *Jaramillo v. Colvin*, 2014 WL 936718 (D.N.M. Feb. 28, 2014).

The symptoms of PTSD Plaintiff was experiencing in 2017 (the time when the ALJ acknowledges her PTSD diagnosis) are the same symptoms Plaintiff was experiencing throughout the

years since she was diagnosed with PTSD in 2013/2014:

> Client endorsed symptoms of PTSD: re-experiencing symptoms (nightmares, intrusive memories, flashbacks), avoidance symptoms (avoiding social interactions with people, public places, avoiding memories related to the trauma), negative alterations to thought and mood (negative thoughts about self, others and the world) and arousal symptoms (irritability/angry outbursts, hypervigilance).

[R. 636; *compare* R. 636 *with* R. 400-553.] The failure to properly recognize Plaintiff's earlier-diagnosed PTSD is significant because while

> PTSD confers significant psychiatric disturbance, functional impairment, and morbidity as a singular diagnosis, depression and PTSD commonly co-occur. Research suggests, for example, that significant depressive symptomatology affects between 30% and 50% of persons diagnosed with PTSD. Compared to those with depression alone, depressed patients with posttraumatic stress disorder (PTSD) experience more severe psychiatric symptomatology and factors that complicate treatment.

*Martinez v. Colvin*, 2017 WL 3600734, at *10 (D.N.M. Jan. 12, 2017) (citing Duncan G. Campbell, Ph.D., *et al.*, *Prevalence of Depression-PTSD Comorbidity: Implications for Clinical Practice Guidelines and Primary Care-Based Interventions*, J. of Gen. Internal Med. 22.6:711 (2007) https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2219856/ (last accessed Oct. 20, 2020)). Moreover, the ALJ made no mention or analysis of Plaintiff's flashbacks or nightmares from the ex-Yugoslavian war Plaintiff lived through.[5] [*e.g.*, R. 415-18.] This is precisely the type of evidence that was wrongly omitted from the ALJ's consideration of Plaintiff's PTSD when the ALJ wrongly determined, by over three years, the date of Plaintiff's PTSD diagnosis. Accordingly, remand is necessary for the ALJ to properly consider Plaintiff's PTSD diagnosis (which may include seeking, as part of the ALJ's duty to develop a full and fair record, clarifying testimony from Plaintiff's mental health treaters at the Hamdard Center about her PTSD symptoms during the period from 2014-2017 and/or her 2013 medical records from Serbia). *Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 513 (7th Cir.1999).

Since the Court remands based on the ALJ's failure to properly evaluate Plaintiff's PTSD, the

---

[5] This is particularly shocking because "long-term symptoms" are "characteristic" of PTSD "following a psychologically traumatic event that is generally outside the range of usual human experience." *Posttraumatic Stress Disorder* (PTSD), entry no. 260450, Stedman's Medical Dictionary (2014).

Court will not address the other alleged bases of error in the ALJ's decision raised by Plaintiff, as they may be affected by the ALJ's treatment of this case on remand. Additionally, should Plaintiff ultimately prevail in her appeal and be granted benefits, Plaintiff's counsel should carefully consider whether to include time spent on his reply brief in the fees he seeks from this Court, as his reply largely consists of language that "Plaintiff stands on the arguments presented in her initial memorandum and refers the court thereto" instead of arguments in reply. [*See* dkt. 20.]

## IV. Conclusion

For the foregoing reasons, the Court must reverse and remand for proceedings consistent with this Memorandum Opinion and Order. Plaintiff's motion for summary judgment [dkt. 9] is GRANTED; Defendant's motion for summary judgment [dkt. 16] is DENIED.

**ENTERED: 10/27/2020**

_____
Susan E. Cox,
United States Magistrate Judge